All rise. The United States Court of Appeals for the Federal Circuit is now open into session. We have five cases on our calendar this morning. Veteran's case, patent case, case from the claims court regarding a vaccine claimant, and an employee case and another claims case. The latter two are not being argued and being submitted on the briefs. Before we proceed to our cases, we have one of the pleasant occasions we often have in our court where we have an opportunity to welcome to our bar one of our law clerks. So I will turn to Judge Rayner for a motion that he wishes to make. Thank you, Judge Lori. It gives me great pleasure to move for the admission of Willow White-Noonan to this honorable court. For the past year, Willow and I have worked closely together. Many late hours, we've had many great discussions, and I've benefited from Willow's keen insight into the law and his expertise in computer and electrical engineering. I now know a lot more about electrical circuits and computer systems than I've ever known before, and a lot of that is due to Willow. But there's more to it than that. Willow, you're an excellent lawyer, and I fully expect that you are going to accomplish great things in the law. I move for admission of Willow White-Noonan, who is a member of the bar in good standing of the highest court of California. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications. Thank you for that motion, Judge Rayner. We do not take any motion lightly, and therefore, we need to evaluate it. Judge Clemencher, how do we decide? I wholeheartedly support the motion. I, too, am familiar with the candidate's work, although a little further distance than Judge Rayner, and I'm simply delighted that he's going to be joining our bar, and I hope we'll see him back here soon on the other side. The motion is granted. Will the candidate step forward, and please take the oath of office from the clerk of court. Please raise your right hand and you swear to affirm that you will report yourself as an attorney and counselor of this court, uprightly and according to law, in the name of the court of the Constitution of the United States of America. I hereby report congratulations and welcome to the bar of the United States Court of Appeals. Thank you, Your Honor. Congratulations from the bench. First case is Harvest O. Tumor versus the Secretary of Veterans Affairs, 2012, 7130, Mr. Lee. May it please the court. Ethan Lee for the appellant, Harvest O. Tumor. Mr. Tumor invokes this court's rule of laws jurisdiction because of the Veterans Court failure to properly consider the rule of law with respect to the presumption of regularity and equitable tolling. Regarding the Veterans Court's analysis of the presumption of regularity, did not consider the proper rule of law laid out or exemplified in Johnson v. Shinseki, which states that when the Veterans Court is faced with a document that violates VA procedure, that those violations must be considered in the presumption of regularity analysis. I call this rule of law, but isn't it a question of application of law to fact, whether the presumption of regularity applied and whether there was equitable tolling or not? These are all facts. Well, the application of the facts to the question of presumption of regularity is a fact question, but that's not what Mr. Tumor is claiming here. Mr. Tumor is claiming that the Veterans Court improperly applied the rule of law by failing to properly consider the procedural violations in the document mailed to him. Do those procedural violations have us looking at the documents and comparing dates and things of that nature? I'm sorry, Judge Rehan. The procedural violations that you speak about, are you asking us to evaluate those procedural evaluations by looking at documents, the dates on documents, and comparing those dates? Well, under this court's rule of law jurisdiction, this court can look to the facts to consider whether the rule of law was properly applied, and I think that means as well that this court can... You haven't answered my question. Are you going to ask us to look at documents and look at dates on documents and make comparisons of the dates? Well, the relief requested in this case was for the court to vacate the Veterans Court's ruling and remand to order them to properly consider the dates. Counsel, I think I'm asking you a yes or no answer. Are you going to ask us or are you asking us to look at documents and compare the dates on those documents? I think the court has the jurisdiction to do so, but it also has the jurisdiction to remand this to the Veterans Court to consider a proper evaluation of those procedural violations. Mr. Lee, my understanding is that you feel strongly that the presumption of regularity can't apply to the August 4 mailing. What we're talking about here is an unsigned copy of a BVA decision that has a handwritten date instead of a date stamp on it, right? No. What we're arguing is that the presumption of regularity should not have applied to the VA's initial mailing. Now, why? The BVA here made a finding that the initial mailing was entitled to the presumption of regularity because the secretary gave a sworn affidavit explaining how it happened. We have computer screenshots that show that the process was in order, and there was a ruling, as I read it, of the BVA that the initial filing satisfied the duty to assist. The government, in its reply brief at page 16, says, although the second mailing may have been irregular, okay, irregular, the court found that the first mailing was entitled to presumption of regularity. That's at page 16 of the red brief, and you did not reply to that contention in your gray brief. So, the way I'm looking at this case, and you're going to have to convince me if I can't speak for my colleagues, but I see here a clear holding by the BVA that the initial mailing, although your client professes never to have received it, is entitled to the presumption of regularity that it was sent, and that any flaw in the subsequent mailings, as Judge Reina pointed out, have to do with looking at the documents, are harmless. What's your response to that? I would think that the procedural violations in the subsequent document go to the heart of the presumption of regularity. How can that infect? How can a botched second mailing infect a presumptively regular mailing? Because the presumption of regularity assumes that government employees follow procedure. Now, we have a document which is full of procedural violations. So, why would you assume that the government probably mailed the first document when the second document, when they were unable to follow procedure in the second document? In other words, one mistake presumes many mistakes. That at least needs to be considered in the presumption of regularity analysis, and the Veterans Court failed to do so. And that gives this court rule law a jurisdiction to consider whether or not the Veterans Court probably can consider it. So, your argument then is that a subsequent botch always infects the previous filing as well. That's the way you're articulating your legal question now. You certainly didn't do that in your reply brief. I think the government's probably a little surprised to hear your argument here today. I think the legal principle I'm trying to articulate is that this needs to be considered in the presumption of regularity analysis. Any, so yes, procedural... Any irregularity down the line later has the effect of going back in time to infect something else that was previously found to be regular. Yes, that would, it needs to be considered in the presumption of regularity analysis, and the Veterans Court failed to do so. And that's why we're asking the court to order the Veterans Court to consider that. Well, the other part of your argument is that the August 4 letter is, as a matter of law, irregular. The government contests that and says there's no regulation out there that says what the follow-up letter has to look like. And that the follow-up letter contained a copy of the board decision. It was not signed, and the reason why it wasn't signed was because the BVA didn't have one in its possession. The only one in the possession of the department that was actually signed and date stamped was back at the RRO. And the government says that's the reason why we sent what we sent, and you don't contest the assertion by the government that the original copy, which you would have once sent, was back at the RRO. So it seems to me that the core of your argument on the August mailing is essentially what Judge Rayna was asking about, which is an exploration into the facts concerning whether or not there was a breach of the duty to assist here or of the presumption of regularity. You agree that, in ordinary circumstances, the question of whether the presumption of regularity exists is a fact question? Yes, it's generally a fact question. But Mr. Toomer is making a claim that the Veterans Court did not apply the proper rule of law to the presumption of regularity analysis, which is a legal question. And if I could address your statement that – or the VA statement that the second mailing did not violate any procedural regulations, Mr. Toomer, as we noted in our brief, contacted the VA, told them that he did not receive the initial mailing. So the VA was aware, knew that Mr. Toomer did not have the initial mailing. Let me ask you this question. What would happen if the record showed that the BVA had in its possession a signed copy that was properly dated, and they had an affidavit from a series of people that said, we remember this case very clearly because it was an important one that was kicked back, and we clearly remember our decision was made on June 1st or June 2nd, and we put it in the mail. We really locked down evidence showing that it's uncontested, showing that from the perspective of the department, the letter was mailed on June 2nd. So it's just airtight. And then your client in the middle of July says, well, I never got it. So you call up and they send you what they sent here, a botch. Would that still undermine the presumption of regularity of the initial mailing? Yes, Your Honor, I think so. Even if you had a case where it was uncontested, uncontested, that the original document was sent on June 2nd, properly sent, the fact that when the agency is trying to respond and send your client information, if there was a technical flaw in that information, that would undermine the presumption of regularity as the initial mailing? I think... That seems a reach, doesn't it, to you? Well, I think the issue that needs to be considered is that these procedural, these procedures, a date stamp and a signature, notify when the veteran's time to file an appeal. But you haven't even proved that the subsequent mailing was flawed. Well, if I could ask you... Can you point to a regulation that says when responding to a request by someone who, say, didn't get it, where the original copy is at the RO, it's no longer at the BVA, that the BVA somehow commits a foul if it sends a copy that's not signed and is dated by hand? No, I haven't been able to find a regulation that specifically mentioned that. But I think that... But what's the basis of your even saying that the August 4 mailing is somehow botched? Because I think you need to look at the purpose of the rules. The purpose of the rules inform the veteran it's time to file an appeal. If the veteran tells the VA, I never got the first mailing, then the rules that require a date stamp should apply to any subsequent mailing. I see my time has expired. Well, you do have time. You're into your rebuttal time. You can save it or use it as you wish. I'd like to reserve some time for rebuttal. We'll save it for you. Ms. Hogan. Good morning, Your Honors. May it please the Court. The Veterans Court found that Mr. Toomer had failed to demonstrate that his circumstances warranted equitable tolling of the time period to file an appeal to the Veterans Court. That conclusion was based on factual findings not reviewable by this court and the correct application of the presumption of regularity to the facts of this case.  This rule of law jurisdiction, this court has explained that it possesses jurisdiction in VA cases when the material facts are not in dispute and the adoption of a particular legal standard would dictate the outcome of the claim. In this case, I don't think that there's any argument about the correct statement of the presumption of regularity. The Veterans Court correctly stated that there is a presumption that government officials mail things on the date that it says and that it requires clear evidence to rebut the presumption that the officials perform their duty. I'm not certain I think that you've answered the presiding judge's question. He was asking what's the derivation, what's the source of this so-called rule of law jurisdiction. Well, the source, I mean, this court has recognized it in Bailey. It comes from 7292 with the... It was before the amendment as to our jurisdiction. We thought we had jurisdiction over regulations and statutes interpreting them, right? Correct. And what we then, Judge Frager wrote the opinion and said, well, when a body of law is created by a court, by a court as opposed to by a statute or regulation like equitable tolling, like presumption of regularity, like presumption of receipt, that that's a rule of law and that if you raise a question within the rule of law, we have jurisdiction. So here what Mr. Lee is saying on behalf of his client is when you are interpreting the presumption of regularity, trying to decide what constitutes a presumption of regularity, he wants a legal ruling that an event which is entitled to the presumption of regularity, he's conceding that the June 2 mailing satisfies the presumption. He's saying the presumption is undercut as a matter of law where there is a botched attempt to send something later. That's his legal question that he's presenting. Now, it wasn't quite as clear as that in his brief, I'll grant you. But as I understand it today, that's his argument. His argument, he says, I will agree, I admit that the June 2 mailing was entitled to the presumption of regularity as it was found by the CABC. But he said that that is undercut as a matter of law. That presumption dies, dies if later on in this context of the same proceeding, the secretary does something that is not entitled to the presumption of regularity. In that case, this court could consider that question of law, but the court should nevertheless conclude... Let's say, let's just assume for purposes of argument, I treat it as a question of law so that I have authority to answer the question. What's the secretary's response? The secretary's response is that the legally relevant issue here is the date of mailing of the original board decision and that that is what the court is required to do, what the Veterans Court was required to consider in determining whether the presumption of regularity had been rebutted. And although I could imagine that there may be some factual situation in which some subsequent event might demonstrate the irregularity of a mailing, that's not the facts that the Veterans Court decided here, certainly not as a matter of law. You're saying the rule of law point language here is simply a Trojan horse to get a facts question into the court. I think that's an accurate characterization, Your Honor. You're just not an equine expert. I am certainly not an equine expert, Your Honor. Well, but you gave away a bit. I mean, you said you thought there might be some subsequent event that would undermine the presumption of regularity that was attached to the previous event. You just said that. Now, you said you couldn't think of one off the top of your head, but if you give Mr. Lee's argument, which is being framed up clearly today, the benefit of respectability, he's saying when the board, the CAVC here, in the second paragraph on page two of his opinion said that the June 2 mailing is entitled to the presumption of regularity. Secretary gave an affidavit. We've got the screenshots done. And then the next sentence is, he fails to explain how the mailing of the later things excuses the untimely found. So the CAVC was ruling as a matter of law that a subsequent event, even if it was botched, doesn't affect the earlier event. And he's saying that's wrong. That's the wrong law. He said it should always infect. We would disagree that that's a rule of law that this court should adopt. There's certainly no precedent that I'm aware of that would guide this court. What did you mean when you said you could imagine a situation in which a subsequent error would infect the previous event that was entitled to the presumption of regularity? Maybe I was being unclear. I can personally, I can imagine a factual scenario in which a subsequent event might present clear evidence to rebut the presumption of regularity as applied to the original mailing. But as a matter of... Is that the kind of thing you had in mind? Something like that, Your Honor. You're saying that would be a horse of a different color. Yes. So are you aware, I did a little research yesterday to see if we had a precedential opinion in which we had clearly and unmistakably said that the question of whether the presumption of regularity is satisfied is a question of fact. We said it in at least four non-precedential opinions. And we have said that with regard to the mailbox rule, the presumption of receipt, we have said in two precedential opinions that that's a question of fact. I'm unaware of any opinion where we have flatly said that when you're dealing with the presumption of regularity, that's a question of fact and not a question of law. Are you aware of any such case? I'm not aware of any such case, but the same reasons why questions about the mailbox rule and equitable tolling are questions of fact would similarly apply to the presumption of regularity. So let's take a look at some of the facts in this case, whether we can or not. And what we have here is we have the June 2nd letter that was given to Mr. Turner on August 4th. The August 4th letter is date stamped. All the documents are date stamped. And apparently that's the regular procedure of the Secretary, except that the copy of the June 2nd letter that they gave to Mr. Turner on August 4th was hand stamped, and all the other documents were hand stamped. That seems to me that maybe that's an instance where you have at least clear evidence, or you have some evidence, that there's an irregularity that's going on here. Because it's not in the regular process of the agency to hand stamp letters. They date stamp letters. Is that correct? It may be helpful to back up and just explain the procedure, Your Honor. Maybe I'll be able to answer your question. The Secretary has a statutory obligation to mail the Board decision on the date that it's issued. And so for that reason, there's a cover letter, the Board decision, and the notice of appeal rights that gets sent to the veteran. Those are all date stamped with the date of the decision, and that goes out to the veteran. When, as happens here, the veteran, for whatever reason, either because the mail gets returned, or because, as here, the veteran informs the Board that if you receive a copy, the Board will send an extra copy of the Board decision. But... You're not sending an actual copy. You're sending a facsimile that you have written in the date by hand because you don't keep copies of the... Correct? So how is anybody to know that the first letter ever went out? I mean, it seems this would not be a question if it was time stamped or date stamped. But if it's hand stamped, then that casts doubt into whether the letter actually ever went out, doesn't it? No, Your Honor, because the secretary produced... Before the veterans, of course, the secretary produced the date stamped copy of the original along with a declaration. Yeah, they did that later after the challenge came up. But back in August 4th, when the veteran received the letter, he did not have that date stamped letter. So you can produce a date stamped letter, a machine stamped letter when you want, but when you send something to the veteran at his request, or her request, you're sending in a handwritten letter. How are they to know that this is in the regular process? Two things, Your Honor. First, the reason... Maybe it's a little convoluted, but the reason that the Board did not have a copy of the date stamped decision at the time that Mr. Toomer requested a copy was because when those decisions are made, they are put in the original claims file for the particular veteran, and they're sent back to the agency of original jurisdiction of the regional office. So the secretary had that copy in its possession, but when Mr. Toomer contacted the Board, the easiest and quickest way for the Board to send him a copy was simply to print out a copy and put in the hand-dated date rather than go back to the RO, request a copy. Well, I understand that. I think it's not good practice to not send a veteran a copy of the actual letter that it's later going to claim we sent you, and then to produce it later at a hearing and say, this is the actual letter, and it's a different letter. I mean, a date stamped and a hand-stamped letter, those are not copies. So the secretary does have possession of the actual copy, and I think it would be more than appropriate if it was to send the veteran at the very beginning the actual copy of the letter. I think that's certainly one way to approach that. I certainly would avoid this kind of a case. If what had been sent to Mr. Toomer in August had been simply the syrups copy of what had gone back to the RO, we wouldn't be here. I think Judge Brennan's suggestion that the secretary might consider using up the taxpayers' money to create a second copy of the actual decision and stick it in the file and keep it at the BBA, it's a pretty good idea. It doesn't even have to be Xerox. No. No, you wouldn't have to use a Xerox machine. You could just push 2 on the little copy thing when you hit it on your computer. I'm sure that the secretary will flip it. But it's true, is it not, that there is not, as you have argued, I just want to ask you for sure, because you make some representations in your brief that I am willing to accord the presumption of regularity. Mr. Lee doesn't dispute your statement that the original went back to the RO. You also say that there aren't any regulations out there that tell the secretary what he's obligated to do when someone calls in and says, I didn't get a copy, please send me something. Is that true? There's no regulation that we could find. The closest that I can come up with is in our appendix. We have the board's internal manual. At page SA91, which is the last page of that supplemental appendix, there is a guidance for board employees about what happens when either mail gets returned or someone requests a copy of the board decisions. And in that first paragraph, the employees or staff are told to prepare a cover letter explaining the reason for the remailing, ensure that the letter is signed and dated, note the date of the remailing cover letter will not match the date of the decision remand. And that's exactly what happened here. There was a cover letter saying, we're asking for a copy of the June 2 decision because you've requested one. That was dated August 4 on the date of the board decision. It was handwritten June 2. Yeah, if they had actually put June 2 on the second letter, it would be fraud. If you're sending a letter to somebody on a certain date, if you purport it to be some other date than it actually was the date, that's fraudulent. What I'm suggesting, Your Honor, is that the board decision is not August 4 on the date on the second letter. Right. What I'm suggesting is that it's clear that the date of the cover letter is not going to be the same date as the date of the decision. Why not put the actual date that the appeal is due on the second letter? And not have a veteran shifting through documents and trying to decipher from different dates what's applicable. Well, what we do have, Your Honor, is the notice of appellate rights, which was included in both mailings. And that form informs the veteran. It's not a question that goes to the case. It's just another suggestion that maybe this is something else you should consider and take back, that when you're going to tell a veteran we sent you a letter, you're sending them a subsequent letter and saying, we sent you a letter on August 2, or June. Today's August. And your appeal is due at this date. And you tell them again. That way there's no confusion. But she still had enough time, didn't she? Yes, Your Honor. And that was one of the other facts that the court appealed. It evolved in time of the date of the second letter, but not the first. And what I'm saying is that there's really a very simple way to avoid this type of confusion and to assist the veteran. I'll certainly make sure that the Secretary hears the court. What happens in the situation where there's a mailing that's entitled to the presumption of regularity, as this initial mailing was, and the veteran doesn't discover that he hasn't heard anything until, say, well beyond the statutory time for filing the notice of appeal? The statute, the 120-day time to file an appeal with the Court of Appeals for Veterans Claims runs from the date on which notice the decision is mailed. So that 120-day deadline runs from the day of mailing, not the date of receipt. And that's not dissimilar to the way many courts work. So in a situation where the veteran doesn't discover the fact that he didn't get a mailing until 130 days after the June 2 date, he's out of luck. Well, I think that's why we have the presumption of regularity, which can be rebutted by clear evidence, and why we have equitable toll. I mean, there are ways to excuse untimely filings in certain circumstances. See, the problem is that you're always going to come here and argue the presumption of regularity. And it's difficult for us to review that, because we cannot review the underlying basis of that type of finding. So it's really circular. Your answer to that is, that's up to Congress. Respectfully, yes. Thank you. Thank you, Your Honor. Thank you, Ms. Hogan. Mr. Lee has a little time left. Your Honor, I'd like to address the court's jurisdiction under its rule of law jurisdiction with respect to the presumption of regularity. This court said in Wilsey that it has jurisdiction under the rule of law to determine whether or not the Veterans Court applied the correct legal rules. Mr. Schumer says here, or we claim here, that the Veterans Court did not apply the proper legal rules because it did not properly consider the procedural violations in the document sent to him. Whether or not those procedural violations were enough to rebut the presumption of regularity is a question that goes to the merits. But the question of jurisdiction, simply by alleging, by claiming that the Veterans Court failed to apply the proper legal rules enough to get over the jurisdictional hurdles of rule of law. If also, I'd like to turn to our equitable tolling argument, which we haven't addressed yet. So Mr. Schumer makes a claim under equitable tolling. We argue that the Veterans Court applied the improper rule of law with respect to equitable tolling because it did not apply the rule of law laid out in Bailey and Irwin. Although, this wasn't something you raised in your primary argument whereby your opponent could respond. But your opponent didn't argue equitable tolling. So you're rebutting something that didn't argument that wasn't made here. Do you have any final comments with respect to the argument that you did make? I have no further comments about presumption of regularity. Thank you, Mr. Lee. We'll take the case under review.